**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L.B., | No. CV-17-03316-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Kyrene Elementary District No. 28, | |
| Defendant. | |

This is an appeal for judicial review of a final administrative decision of the Arizona Office of Administrative Hearings ("OAH") under the Individual with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). (Doc. 1 ¶ 1, "Complaint"). L.B. ("Parent") brings this case on behalf of her child, J.B. She alleges that J.B. is a student with behavior disabilities and Kyrene Elementary District No. 28 (the "District") failed to provide him with a Free Appropriate Public Education ("FAPE") as required by IDEA. Parent filed an Opening Memorandum. (Doc. 34, "Op."). The District filed an Answering Brief (Doc. 35, "Ans."), to which Parent replied (Doc. 36, "Reply"). The Court previously granted Parent's motion to consider additional evidence. (Doc. 23).

**I.    Background**

J.B. was a student in the District. Parent alleges he has complex disabilities including reactive attachment disorder, fetal alcohol syndrome, Klinefelter's syndrome, intellectual disability, attention deficit hyperactivity disorder, dyslexia, and dysgraphia. (Complaint ¶ 6). She alleges the District did not provide sufficient services to J.B., thus

denying him FAPE. An Administrative Law Judge ("ALJ") at the OAH held a hearing over nine days between November 4, 2015, and January 11, 2016. On August 22, 2017, the ALJ issued a decision (IR 325, "ALJ Decision") in favor of the District.

Because the review of this case is fact-intensive and Parent is appealing multiple issues from the OAH decision, the Court will discuss the relevant facts of the case in conjunction with each issue. The opening brief lists the following issues:

1. The District denied J.B. FAPE when it refused to complete evaluations or offer FAPE on December 19, 2013 and after until J.B. re-enrolled in the District;
2. The District's October 2, 2013 decision to not change J.B.'s Individual Education Program ("IEP") denied him FAPE;
3. The District denied J.B. FAPE by failing to conduct necessary evaluations; and
4. The District denied J.B. FAPE by failing to provide Parent with all of J.B.'s education records.

Parent also alleges she should be reimbursed for J.B.'s private educational placements. The Court will take each issue in turn.[1]

**II. Legal Standard**

Under IDEA, an aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The moving party bears the burden of proving the ALJ's decision was not met by a preponderance of the evidence. *Clyde K. v. Puyallup Sch. Dist. No. 3,* 35 F.3d 1396, 1399 (9th Cir. 1994). The district court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

---

[1] Parent's Complaint lists many more issues. (Doc. 1). The listed issues, however, are the only ones which are "argued specifically and distinctly." *California v. Azar*, 911 F. 3d 558, 573 n.1 (9th Cir. 2018) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)). Accordingly, the Court will only consider the listed issues.

Parent contends the Court must review the ALJ's findings, conclusions, and decision *de novo*. (Op. at 2). In a judicial proceeding under IDEA, a reviewing court is required to conduct a modified *de novo* review. *M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1061 (9th Cir. 2003). The Court reviews *de novo* the question whether a school district's proposed IEP provided a FAPE under IDEA. *Timothy O. v. Paso Robles Unified Sch. Dist.*, No. 14-55800, 2016 WL 2957215, at *9 (9th Cir. May 23, 2016). Mixed questions of law and fact are reviewed *de novo*, unless the question is primarily factual. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). Courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982). However, it is a matter of district court discretion to decide the degree of deference to give to the ALJ's determination. *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1474 (9th Cir. 1993). In reviewing the administrative record as a whole, courts may accept the conclusions of the ALJ that are supported by the record and reject those that are not. *Fed. Way*, 341 F.3d at 1061–62.

IDEA does not require school districts to provide the "best" education. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010). It merely sets a "basic floor of opportunity." *Id.* The District "must provide Student a FAPE that is 'appropriately designed and implemented so as to convey' Student with a 'meaningful benefit.'" *Id.* at 432–33 (quoting *Adams v. State of Or.*, 195 F.3d 1141, 1149 (9th Cir. 1999)). IDEA also "does not require a district to comply with every parent request." *K.S. v. Fremont Unified Sch. Dist.*, 545 F. Supp. 2d 995, 1009 (N.D. Cal. 2008). The District must, however, "seriously consider the parents' concerns, and when there is no agreement, provide the parent with the opportunity to challenge the IEP at a due process hearing." *Id.*

**III. Analysis**

The ALJ Decision is a 130-page order setting forth the witnesses, evidence, and issues at the hearing along with detailed findings of fact. The ALJ states she considered the entire record, including all the testimony and every exhibit. (ALJ Decision at 10 n.28).

Because the Court finds the ALJ was thorough and careful in her findings, the Court concludes they are entitled to significant weight. *JG v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). The Court will consider the issues in the order that Parent briefed them.

1. <u>Did the District deny J.B. FAPE by not completing evaluations or offering FAPE after December 19, 2013, unless J.B. re-enrolled in the District?</u>

The ALJ ruled that the District did not have IDEA obligations after J.B.'s October 14, 2013 withdrawal from the District and that Parent failed to plead the District was required re-evaluate and re-offer FAPE after December 19, 2013. (ALJ Decision at 103–06, 124–25). Parent argues this was error, as the Local Education Agency ("LEA") where a child resides is responsible for providing FAPE to the child and she properly pleaded this issue below. Alternatively, if the Court concludes the claim was not properly raised below, Parent argues the Court should still consider the claim because it is an issue of law and the record is fully developed.

    a.    *Background*

On September 19, 2013, Parent provided the District 10-day notice of her intent to enroll J.B. in a private placement. (IR 277). In a prior written notice ("PWN") dated October 4, 2013, the District offered to pay for Parent's desired private placement for the second quarter of the school year with the plan to transition J.B. back to the District by January 6, 2014. (IR 287). "[J.B.] was withdrawn from [the District] and parentally placed at [private placement] on October 15, 2013." (IR 291).

While J.B. was in this private placement, Parent and the District continued discussions to transition J.B. back to a District school. Parent requested speech and occupational therapy services on November 4, 2013, which the District made available at one of its elementary schools. (IR 291). On December 3, 2013, the District met with Parent to review a speech language evaluation. (IR 147). There were also many emails between various officials at the District and Parent. (IR 207). District personnel even visited J.B. at the private placement, which Parent argued "traumatized" J.B. (IR 85 at 26). On December 19, 2013, the District held a Multidisciplinary Evaluation Team ("MET") meeting attended

- 4 -

by Parent, officials from the District, and officials from the private placement. (IR 303). After that meeting, the District issued a final PWN.

The District's final PWN on December 19, 2013, noted that J.B. was no longer enrolled in the District and Parent had rejected a written agreement meant to transition J.B. from a private parental placement back into a District school. (IR 303 at 15). Instead of accepting the District's plan to transition J.B. from a private placement back to a District school, Parent offered a different plan, which the District refused. (IR 303 at 15; *see* IR 241). The PWN further noted the District's attempts to evaluate J.B. at the private placement were rejected by Parent because she believed it would be too traumatic for J.B. (IR 303). Parent proposed other methods of evaluation that the District thought would be unsuccessful. The PWN concluded with, "As [J.B.] is not currently a student enrolled in Kyrene School District, no further [Multidisciplinary Evaluation Team/Individual Education Plan] meetings will take place. Should [L.B.] choose to enroll [J.B.] as a student in Kyrene, we are ready[,] willing[,] and able to implement his [Individual Education Plan] as written and proceed with the evaluation process." (*Id.*).

The ALJ's Decision substantiated the District's characterization of failed attempts to evaluate J.B. She noted, "Parent was 'adamant' that she did not want any observations by [the District] at [the private placement] and she specified, in writing, that she would not allow any testing at that time." (ALJ Decision at 107; *see also* ALJ Decision at 98 n.290). In the findings of fact, the ALJ found no indication Parent agreed to evaluations after the December 19 PWN. (ALJ Decision at 98 n.290). The record also contains multiple instances of the District attempting to accommodate J.B. after his withdrawal. (*See* IR 241, 291, 299, 303). Parent alleges the ALJ's conclusions are contrary to the record, and she was willing to allow evaluations, but at a slower pace than the District wanted and under different circumstances, such as by video, in an effort to prevent J.B. from being traumatized by the presence of District personnel. (IR 241).

      b.     *Whether Parent sufficiently pleaded this issue*

Parent claims she raised the issue of post-December 19 IDEA obligations in her

seventh[2] and tenth[3] claims of the Amended Due Process Complaint filed February 6, 2015, in the Administrative proceeding. (IR 45). On March 19, 2015, the ALJ issued an order setting the issues for the hearing. (IR 111). Though Parent's original claim seven alleged the District failed to provide FAPE by refusing to hold any additional IEP or multidisciplinary evaluation team ("MET") meetings after she did not agree to the District's written agreement to transition J.B. back into a District school in December 2013, the ALJ's version of claim seven focused on Parent's September 19, 2013, notice of intent to privately place J.B.:

> Petitioners allege that Respondent violated IDEA by attempting to contract with Parent outside the IEP process, or coerce Parent to sign a contract for funding, regarding the "private placement" and refusing to fund the private placement, and *subsequently* violated the IDEA by refusing to hold IEP or multidisciplinary evaluation team ("MET") meetings or provide any IEP services to Student.

(IR 111 at 4 ¶ 7) (emphasis in original). The ALJ's restated issue included a footnote that indicated the ALJ was most concerned about what happened after Parent "gave ten-day notice of private placement on September 19, 2013." (IR 111 at 4 n.12). The ALJ's version of claim ten was also slightly different than the Amended Complaint. It stated: "Petitioners allege that Respondent denied FAPE to Student by unilaterally withdrawing Student from the District on October 14, 2013 and thereafter, refusing to provide any IDEA special

---

[2] Claim seven as it appears in the amended due process complaint: "Whether [the District] denied J.B. a FAPE by attempting to enter into contractual relationships with Parent, outside of the IEP process; attempting to coerce Parent into signing [the District's] unilateral contract; threatening or refusing (after Parent refused to sign [the District's] contract) to fund the private placement it had agreed to fund and in refusing thereafter to hold any additional IEP or MET Meetings or to provide any IEP-related services to J.B.; and using the temporary private placement as a bargaining chip for trying to get Parent to sign [the District's] contractual agreement. (December 2013)." (IR 45 at 37–38).

[3] Claim ten as it appears in the amended due process complaint: "Whether [the District] denied J.B. a FAPE by unilaterally withdrawing him from [the District] after Parent would not enter into a contractual agreement with [the District] regarding J.B.'s special education placement and services and thereafter refusing to provide direct instruction and special education services to J.B. unless and until he was re-enrolled by Parent." (IR 45 at 38).

education services unless and until Student re-enrolled in District." (IR 111 at 5 ¶ 10). Because Parent could have objected or attempted to clarify the ALJ's re-articulation of the issues but seemingly did not, the Court will only consider whether the issues set by the ALJ sufficiently pleaded that the District was required by IDEA to evaluate and offer FAPE to J.B. prior to him re-enrolling in the District.

In Parent's post-hearing arguments, she argued the "District failed to provide J.B. FAPE by refusing to develop an IEP based on his present levels in December 19, 2013." (IR 85 at 25). The ALJ referred to this argument as a "new issue" not within the issues articulated in its order setting the issues for the hearing. (ALJ Decision at 103). She explicitly concluded that such an argument did not fall under issues seven or ten because neither of those issues dealt with "developing an IEP." (*Id.*). In ruling on issue ten, she concluded the District had made its offer of individualized special education services and met its obligations under IDEA because the District did not have an obligation to provide specialized services after J.B. withdrew from the District on October 14, 2013. (*Id.* at 106). In considering issue 7, the ALJ focused primarily on the time following Parent's notice of intent to seek a private placement in September 2013 and recounted the meetings after that notice. (*Id.* at 124–25).

The Court disagrees with the ALJ and the District that Parent failed to plead this issue.[4] Issue seven makes reference to contracting outside of the IEP process. The most natural reading to the Court is that reference includes the written agreement outlining the District's plan to transition J.B. from the private placement back to a District school. Issue seven also mentions the private placement and refusing to fund it, which is exactly the topic of the written agreement that Parent rejected on December 19, 2013. Subsequent to Parent rejecting that agreement, the District refused to hold IEP or MET meetings until J.B. re-enrolled in the District. While it is possible this issue may relate to multiple contracts and

---

[4] The District brought to the Court's attention that Parent has another pending matter in OAH against the District with a substantially similar issue as this one. That matter has been stayed pending the outcome of this case. Because that case is not before the Court, the Court makes no conclusions about its merits or relationship to this case.

meetings, the District has not explained why it would not relate to the proposed written agreement that parent rejected on December 19, 2013, and any subsequent IEP meetings.

Issue ten also lends support to Parent. The issue it raises involves the District's obligations to provide special education services after J.B.'s withdrawal from the District. Parent was alleging the District owed special education services under IDEA to J.B., which is necessarily relevant to the District's FAPE offer. The issue it raises is whether IDEA still required the District to provide special education services (and what type in what quantity) after J.B. withdrew from the District, which includes the time after December 19, 2013. Accordingly, the Court finds the issue of whether the District was required to complete IEP evaluations and offer FAPE after J.B. withdrew from the District was properly raised.

    c.    *Whether the District was required to evaluate J.B. and offer FAPE after December 19, 2013*

Relying on *Hack v. Deer Valley Unified School District*, Parent argues that the district in which she resides is responsible for offering FAPE to J.B. No. CV-15-02255-PHX-JJT, 2017 WL 2991970, at *5–6 (D. Ariz. July 14, 2017). The District agrees it had an obligation to offer J.B. FAPE. (Ans. at 13). The District argues that it did not violate IDEA, however, because it repeatedly offered FAPE, frequently reviewed J.B.'s IEP, and points to federal guidance that relieves a LEA from offering FAPE "[i]f the parent makes clear his or her intention to keep the child enrolled in" an out-of-district private school. *Assistance to States for the Educ. of Children with Disabilities & Preschool Grants for Children with Disabilities*, 71 Fed. Reg. 46540-01, 46593, 2006 WL 2332118 (Aug. 14, 2006).

As *Hack* explains, the ALJ was incorrect and a district does have IDEA obligations to a student residing within the district even after the student withdraws. "[A] school violates IDEA when it withholds an offer of a FAPE from a student residing in that district until parents enroll the student." *Hack*, 2017 WL 2991970, at *6 (citing cases); *see* 71 Fed. Reg. 46540-01 at 46593 ("[T]he LEA where the child resides is responsible for making FAPE available to the child."). Therefore, IDEA requires a district to offer a student FAPE "upon request of Parents." *Hack*, 2017 WL 2991970, at *6 (citing *J.W. ex rel J.E.W. v.*

*Fresno Unif. Sch. Dist.*, 626 F.3d 431, 459 (9th Cir. 2010)). In *Hack*, the student's previous IEP had expired and the parents requested a new IEP before the student was to start kindergarten when the district refused to offer FAPE until the student enrolled. *Id.*, at *5–6. This Court found such a scenario violated IDEA. *Id.* The Court is not convinced *Hack* is directly on point, however, as this case is factually much different. The school in *Hack* had not made an offer of FAPE that was rejected nor had it met with the parents multiple times in IEP meetings. *Hack* also, unlike here, involved a student with an expired IEP. *Hack*, 2017 WL 2991970, at *1; *see* 34 C.F.R. § 300.324(b)(1)(i) (school districts must review a student's IEP at least annually).

The Court is unable to conclude on this record that the District denied J.B. FAPE in this instance and must remand for further proceedings. The District argues it met its IDEA obligations because it repeatedly offered FAPE and Parent repeatedly rejected the offers. Indeed, it points to multiple PWNs that indicated the District's offer of FAPE was to pay for the private placement with the intent of transitioning back to the District for the beginning of the second semester of the 2013–14 school year. In the October 4, 2013 PWN, the District's offer was to pay for the second quarter of the school year at the private placement with an anticipated return to the District by January 6, 2014. (IR 287). In the November 8, 2013, PWN, the District reiterated its offer was to pay for J.B.'s private placement until December 20, 2013, with the goal of transitioning him back to the District by January 6, 2014. (IR 291). And again, the PWN prepared December 5, 2013, noted the District planned to pay for the private placement until December 20, 2013, with the goal of transitioning J.B. back to the District as outlined in the October and November PWNs. (IR 299). The December 5 PWN noted the District scheduled a December 19 meeting to review existing data. (IR 299). It also noted Parent indicated she did not want to move forward with the plan to transition J.B. back to the District by January 6, 2014. (IR 299).

On the other hand, the December 19, 2013 PWN suggests the reason the District stopped evaluating J.B. was because he was not enrolled. (IR 303 "As [J.B.] is not currently a student enrolled in Kyrene School District, no further MET/IEP meetings will take place.

Should [Parent] choose to enroll [J.B.] as a student in Kyrene, we are ready[,] willing[,] and able to implement his IEP as written and proceed with the evaluation process."). The December 19 PWN noted that the most recent IEP team meeting, conducted October 4, 2013, less than three months prior, concluded that the appropriate least restrictive environment ("LRE") was a self-contained classroom within the District, and Parent "was not willing to move forward with any portion of the plan to transition [J.B.] back to Kyrene." (IR 303 at 15). The ALJ also ruled that after October 14, 2013, the District "had no IDEA obligation to offer or provide individualized special education services to Student, a child no longer enrolled with the [District], until Parent[] re-enrolled [J.B.]." (ALJ Decision at 106). But the ALJ noted Parent also refused the District's multiple attempts to evaluate J.B. and did not appear to be softening from that position. (ALJ Decision at 98 n.290, 107). A public agency cannot reevaluate a student without parental consent. 34 C.F.R. § 300.300; *see also Gregory K v. Longview Sch. Dist.*, 811 F.2d 1307, 1315 (9th Cir. 1987) ("If the parents want [Student] to receive special education under the Act, they are obliged to permit such testing."). The record also lacks information as to what steps Parent took after December 19, 2013, to request FAPE.

To state the applicable law more succinctly, the District is required to provide FAPE to students that reside in its district, but it is not required to provide FAPE "if the parent makes clear his or her intention to keep the child enrolled" in an out-of-district private school. It also does not have to provide special education if Parent refuses to allow testing. The District is, however, required to offer FAPE to a student upon request of Parent. From the Court's perspective, the record does not provide enough information to resolve these competing tensions, and the Court will remand the case back to OAH for findings of fact and conclusion of law as to: (1) whether Parent made clear she had no intention of re-enrolling J.B. at the District; (2) whether her rejection of District's attempted evaluations relieved the District of its IDEA obligations; (3) whether Parent's rejections of the final FAPE offer, in December 2013, relieved the District of further obligations under IDEA; and (4) whether she made any attempts after December 19, 2013, to request FAPE.

2. <u>Did the District's October 2, 2013, decision to not change J.B.'s IEP deny J.B. FAPE?</u>

Parent contends the District denied J.B. FAPE by failing to change his IEP after October 2, 2013. She alleges the District made its decision not to change the IEP based on incorrect data and claimed the data supported a change. (Op. at 19). In her view, the data showed the opposite: that J.B. was not making progress and actually regressing. (*Id.*).

An IEP needs to be reviewed "periodically, but not less frequently than annually." 20 U.S.C. § 1414(d)(4)(A)(i). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017). "Appropriate progress" is determined on a case-by-case basis, and there is no "bright-line rule" to determine whether it is being made. *Id.* The absence of a clear rule, however, is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* (quoting *Bd. Of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). It is not the Court's role to "resolve 'persistent and difficult questions of educational policy.'" *Rowley*, 458 U.S. at 208 (quoting *San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

By asking the Court to consider all the data she lays out in the brief, Parent is asking the Court to substitute its own notions of sound educational policy for the District's. This, combined with the significant weight afforded to the ALJ, dooms her claim. Though it is not clear whether Parent directly pleaded this issue below, it is clear the ALJ considered the statistical data when she made her decision. Parent asserts this allegation is encompassed by her Issue three, which alleged in very general terms that the District failed to provide FAPE to J.B. by not providing relevant direct special education goals and services. The ALJ Decision dismissed Issue 3 because it lacked specificity as to what particular goals and services should have been included in or excluded from J.B.'s IEPs. (ALJ Decision at 117).

Nevertheless, portions of the ALJ Decision discuss some of the relevant data that

Parent contends should have triggered a new IEP in October 2013. (ALJ Decision at 23, 39, 51, and 70–71). The decision explicitly noted it reviewed daily point sheets, bus incident sheets, and teacher testimony (ALJ Decision at 113). The ALJ considered the data, including what caused J.B.'s behavior to fluctuate, such as being tired or hungry. (ALJ Decision at 114). The District believed his behavior was consistent with students who have mental health challenges. (IR 332 at 1979). As one witness for the district put it, it was early in the new school year, and, in that population of students, it was not unusual for a student to have difficulty adjusting to a new school year or coming back to school from long breaks. (*Id.*).

Parent contends the behavior data was inaccurate because the system changed how it recorded J.B.'s behavior from the year prior. In her view, the data showed J.B. was not making progress on his behavior goals and problem behaviors were increasing in frequency and duration. (Op. at 19). She was also upset with the District's frequent restraining of J.B. (*Id.*).

The District acknowledges some discrepancy in the data. (Ans. at 20). Errors in the data, however, were minor and would have very little difference on impact trends. (IR 327). Additionally, the raw numbers do not tell the whole story. J.B.'s teacher also testified that his problem behaviors were "very short" and of "low and moderate" intensity. (IR 332).

The ALJ ultimately concluded that the data's accuracy did not have a large effect on her decision, instead basing it on the entirety of the record, including the observations of teachers, behavior specialists, and counselors. (ALJ Decision at 111–114). The ALJ made these conclusions in the context of considering J.B.'s functional behavioral assessment ("FBA") and not IEP discussions because Parent "did not raise an IDEA allegation of a procedural violation, or FAPE-failure, due to the data, inaccuracy of the data, lack of data, or recordkeeping." (ALJ Decision at 112). The conclusions were a discussion of the data that Parent believes show the District needed to change J.B.'s IEP in early October 2013. The ALJ's fact-intensive look at the unique circumstances of the student is exactly what is required by IDEA and the caselaw. The Court gives significant

weight to the ALJ's Decision and will not reinterpret her well-reasoned findings. Parent will not prevail on this issue.

3. <u>Did the District deny J.B. FAPE by failing to conduct necessary evaluations?</u>

Parent argues the District needed to conduct a neuropsychological evaluation, a functional behavioral assessment ("FBA"), a speech-language evaluation, and an occupational therapy evaluation. A district must reevaluate each child with a disability if the district determines a student's educational needs warrant a reevaluation or if the child's parent or teacher requests a reevaluation. 34 C.F.R. § 300.303(a)(1–2). A reevaluation must occur at least every three years but not more than once a year unless the parent and district agree otherwise. 34 C.F.R. § 300.303(b)(1–2). The District last reevaluated J.B. in February 2011 (IR 143), meaning a reevaluation absent a parent or teacher's request was not due until February 2014. A student must be "assessed in all areas related to the suspected disability." 34 C.F.R. § 300.304(c)(4). The District, however, does not have to comply with every parent request but only must "seriously consider the parents' concerns." *See Fremont Unified Sch. Dist.*, 545 F. Supp. 2d at 1009.

a. *Neuropsychological evaluation*

In Parent's Amended Due Process Complaint (IR 45), she alleged the District failed to do a number of evaluations, including an occupational therapy evaluation, a FBA, and a speech and language evaluation. (IR 45 at 14–23). The Complaint did not include a "neuropsychological evaluation," though Parent alleges such an evaluation falls under her requests for "academic and cognitive assessments." (Op. at 27). A party may not raise issues at a hearing that were not raised in the due process complaint. 34 C.F.R. § 300.511(d). The ALJ found that a neuropsychological evaluation was not part of the complaint or amended complaint and could not be raised. (ALJ Decision at 108).

The Court agrees with the ALJ and the District that the request for a neuropsychological evaluation was not presented in the Amended Due Process Complaint. The amended complaint mentions a previous neuropsychological "screening," including a footnote explaining what the screening is designed to do, but it does not say Parent ever

requested the District to conduct one. It also asks for reimbursement of a neuropsychological evaluation Parent privately obtained. (IR 45). Parent does not point to any point of the hearing or of the pre-hearing filings that would indicate she requested a neuropsychological evaluation prior to filing her due process complaint.

This conclusion is not an overly formalistic one. A district court reviewing an ALJ's decision can consider claims not raised below if it is merely a legal issue with developed facts. *Gerger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). The Court does not have developed facts as neither party has cited to anywhere in the record which would provide a workable definition of what a neuropsychological evaluation is. Parent alleges it falls within her allegation for academic and cognitive testing (Op. at 26), while the District calls it a "very specific type of evaluation conducted by a specific provider." (Ans. at 22). The Court is without facts to resolve the discrepancy and must conclude Parent failed to raise the issue.

b. *Functional behavioral assessment*

Parent alleges the District should have conducted an FBA based the District frequently restraining J.B. to control his behavior. He was restrained 16 times in 22 days. Parent's witnesses at the hearing testified that any student who is restrained more than 3 times in 6 months should prompt a district to do an FBA and failing to do so denied J.B. FAPE. (Op. at 28).

The ALJ disagreed. As discussed in the second issue on appeal, the ALJ carefully considered the behavior data presented by the parties. (ALJ Decision at 111–115). The ALJ also considered the testimony of Parent's witness and found his testimony to lack foundation. (ALJ Decision at 114). She also found that the District was aware of J.B.'s behaviors and consulted with Parent and Parent's chosen counselor and the IEPs had lengthy lists of behavioral supports. (ALJ Decision at 115).

An FBA is an assessment to determine the purpose or reason for behaviors of a child in order to identify new interventions that may assist a child. *D.O. v. Escondido Union Sch. Dist.*, 3:17-cv-2400-BEN-MDD, 2018 WL 6653271, at *2 (S.D. Cal. 2018); IR 332 at

1972. When an IEP team makes the determination that inappropriate behavior was the manifestation of the child's disability, it must either conduct an FBA or, if a behavioral intervention plan has already been developed, review and modify the plan to address the behavior. 34 C.F.R. § 530(f). Failure to conduct an FBA does not make an IEP inadequate as long as the IEP "adequately identifies a student's behavioral impediments and implements strategies to address that behavior." *M.W. v. N.Y.C. Dept. of Educ.*, 725 F.3d 131, 140 (2d Cir. 2013).

The IEP in effect at the time in question was issued in January 2013. It had extensive information regarding J.B.'s behavior impediments and goals, including a detailed behavior support plan ("BSP"). (IR 158 at 521–23, 525–27, 530–35). The BSP had goals for J.B., baseline targets, a list of potential antecedents to inappropriate behavior and ways to address them, positive reinforcement behaviors, and interventions for unsafe or disruptive behaviors. (*Id.* at 530–35). The ALJ also considered testimony from Lisa Roberts, the District Behavior Intervention Teacher, who testified that the function of J.B.'s behavior was to avoid tasks and get attention. (IR 332 at 1977). This was consistent with a private FBA obtained by Parent in June 2014. (IR 169 at 5). The record supports the ALJ's conclusion that an FBA was not warranted because the District was aware of the functions of J.B.'s behaviors

c. *Speech-language assessment*

Parent alleges the District should have conducted a speech-language evaluation as the previous formal speech-language evaluation was done in 2009. The District was already providing J.B. with speech-language services. (IR 258). Parent requested another speech-language evaluation in January 2013, but the District determined it was unnecessary because J.B. still qualified for speech-language services. (IR 329). Parent obtained a private assessment in September 2013. (IR 173).

At the hearing, Diane Forbes, the District's speech and language pathologist testified that she believed J.B.'s speech and language services were appropriate and he was making progress. Ms. Forbes also found the private assessment's conclusions consistent

with her experience. (IR 329 at 1108). The ALJ found that the District had the requisite information to address J.B.'s speech and language needs and J.B. was receiving the necessary treatment. (ALJ Decision at 110).

The Court agrees with the ALJ. It is unclear what Parent thought an additional assessment would add. The District was providing speech and language services to J.B. and had a speech and language pathologist working with him who helped develop his IEP. The record demonstrates that an additional assessment was unnecessary.

d. *Occupational therapy assessment*

Parent alleges the District should have provided an occupational therapy assessment. She obtained one privately. (IR 175). The District argues it had sufficient information to meet J.B.'s occupational needs. The ALJ agreed below, largely relying on testimony from Anne Prengel, the District's certified occupational therapy assistant. (ALJ Decision at 109). At the hearing, Ms. Prengel testified that each of the private assessment's recommendations were already being implemented. The January 2013 IEP also noted that the District would provide occupational therapy services.

The Court agrees with the ALJ. The record supports that an occupational therapy assessment was not necessary, as the District was providing occupational services and had sufficient information to meet J.B.'s needs.

4. <u>Did the District deny J.B. FAPE regarding J.B.'s education records?</u>

Parent alleges the District failed to provide J.B. FAPE by not providing promised explanations of J.B.'s IEP goal data and not promptly turning over video from an incident on a bus involving J.B. A parent has a right to inspect "education records." 34 C.F.R. § 300.613(b). This includes a "right to a response from the participating agency to reasonable requests for explanations and interpretations of the records." *Id.* IDEA borrows the definition of "education records" from the Family Educational Rights and Privacy Act ("FERPA"). 34 C.F.R. § 300.611(b). FERPA defines education records as those records that are "directly related to a student" and "maintained by an educational agency or institution or by a party acting for the agency or institution." 34 C.F.R. § 99.3.

Here, the ALJ held the video from the bus incident was not an education record. (ALJ Decision at 129). There was no evidence regarding how the video was maintained or if an agency or other entity was responsible for doing so. (*Id.*). Parent does not point to any evidence to indicate that finding was incorrect. Therefore, the Court finds the bus video were not education records within the meaning of IDEA. Parent's citation to a Utah case involving a surveillance recording found to be an education record under FERPA does not persuade the Court otherwise. *See Byrner v. Canyons Sch. Dist.*, 351 P.3d 852 (Utah. App. 2015). There, the video was "maintained by persons acting for the district." *Id.* at 858–59. That key fact is missing here. Therefore, the Court agrees with the ALJ that the bus videos were not education records.

Additionally, the District's failure to create new documents to explain the existing record is not an IDEA violation. A parent only has a right to a response to reasonable requests for explanations of the records. Parent alleged that the District "tried to explain the data but Parent was still confused." (Op. at 31). She also alleges she asked several questions on October 17, 2013, to which the District failed to respond. Her record cite for that claim, however, goes to a portion of the transcript that does not seem to have any relevance. (*Id.* (citing to IR 333 at 2299:4–13)). Even if the District failed to respond as alleged by Parent, however, the Court finds this to be a harmless procedural error that does not constitute a denial of FAPE. *See L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2008). The record does not support a conclusion that the lack of a response from the District seriously infringed Parent's opportunity to participate in meetings concerning J.B.'s education. She still received the education records, including the data, and, as mentioned above, used the data both here and at the ALJ proceedings to argue her side. Accordingly, the Court affirms the ALJ Decision on this issue.

5. <u>Reimbursement</u>

Parent asks the Court to order District to reimburse her for the cost of tuition at the private placements she chose after she withdrew J.B. from the District. (Op. at 31–32). She also asks for reimbursement regarding the contested private assessments discussed above

and for attorneys' fees. (*Id.* at 32, 37). "[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985). Parents are only entitled to reimbursement "for the cost of providing an appropriate education when a school district has failed to offer child a FAPE." *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1485 (9th Cir. 1992) *superseded in part by statute on other grounds*. Funding may also be denied when a parent has "failed to cooperate with a school district or otherwise frustrated a district's attempt to offer a FAPE." *Mr. and Mrs. A. v. New York City Dept. of Educ.*, 769 F. Supp. 2d 403, 419 (S.D.N.Y. 2011); *see* 20 U.S.C. § 1412 (Reimbursement for private school placement may be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents.").

Parent has not established that she is the prevailing party in this action and her request for reimbursement and attorneys' fees is denied without prejudice. *K.S. ex Rel P.S. v. Fremont Unified Sch. Dist.*, No. C 06-07218 SI, 2008 WL 1774291, at *4 (N.D. Cal. April 16, 2008) (holding that a remand in and IDEA case does not confer upon a plaintiff the status of prevailing party").

## IV. Conclusion

For the reasons explained above, the case is remanded back to the Arizona Office of Administrative Hearings for consideration of the first issue Parent raised in this Court.

Accordingly, **IT IS ORDERED** affirming the decision of the Administrative Law Judge as to all issues except one. The decision of the Administrative Law Judge is reversed as to her finding that the parties had not properly raised whether the District had obligations to evaluate J.B. and offer FAPE after December 19, 2013 and remanding for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Supplement Authority (Doc. 40) without prejudice.

1       **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 4th day of September, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge